UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL No.
18-10087-FDS

UNITED STATES OF AMERICA

v.

DENZEL SMITH and DILON SMITH

### ORDER ON DEFENDANTS' MOTION TO COMPEL

October 1, 2018

DEIN, M.J.

This matter is before the court on Defendant Denzel Smith's Motion to Compel Discovery (Docket No. 47) and Defendant Dilon Smith's Motion to Compel Discovery (Docket No. 48). After consideration of the parties' written submissions and their oral arguments on September 27, 2018, it is hereby ORDERED as follows:

1. **The Motion of Defendant Denzel Smith** ("Denzel") **to Compel Discovery** (Docket No. 47) is **DENIED** as follows.

### Overview

The defendants are each charged with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). The charges stem from the search of the basement apartment at 177 Megan Road in Hyannis, MA on November 29, 2017, pursuant to a state search warrant obtained on November 28, 2017.[1] In the search warrant affidavit it was alleged that Dilon and Denzel Smith were distributing large quantities of fentanyl. (¶ 1). It was alleged that the basement apartment at 177 Megan Road was being used as a "stash/trap house." (¶ 5). In addition to describing information from three Confidential Sources ("CS"), and general patterns of behavior consistent with drug dealing, the application described specific controlled buys – one during the week of November 18, 2017 by CS1 from

---

[1] A copy of the warrant is attached to the Government's Opposition to the Motions to Compel (Docket No. 51) ("Gov't Opp.") as Exhibit A (Docket No. 51-1).

Denzel (¶ 7) and one within 72 hours of the warrant application by CS2 from Dilon (¶8).  During the search law enforcement found two firearms and ammunition, as well as baggies containing narcotics (over 100 grams of cyclopropyl fentanyl and a small amount of fentanyl) hidden in the drop ceiling of the bedroom and in sneakers in the bedroom closet, two narcotic presses, a digital scale, and other drug-packaging material.  See Gov't Opp. (Docket No. 51) at 2.  The defendants have not been charged federally with the drugs.  The government does not intend to call any of the Confidential Sources as witnesses.

In addition to the search warrant and affidavit for 177 Megan Road, the government has produced the November 17, 2017 warrant and affidavit for a GPS Tracker on Denzel's Chevy Impala (Gov't Opp. at Ex. B), the November 22, 2017 warrant and affidavit for a GPS Tracker on Dilon's BMW (Gov't Opp. at Ex. C), and the November 29, 2017 warrant and affidavit for 321 Mitchells Way in Hyannis, which the government believed was also being used as a stash house.  Gov't Opp. at Ex. D.  The latter warrant was executed on November 29, but nothing was seized.  Gov't Opp. at 6.  These warrant affidavits also describe controlled buys from Confidential Sources.  Finally, additional facts relating to the events leading up to the search of 177 Megan Road were explored at Denzel's detention hearing before this court on April 10, 2018, and in Dilon's detention hearing on May 7, 2018.  These hearings included facts relating to a shooting at 38 Fresh Holes Road, Hyannis on November 24, 2017.  Some witnesses identified the defendants as being present at the shooting and/or being the shooter, and the government believes that GPS evidence links them to the shooting as well.

**Specific Discovery Requests**

Denzel has made the following discovery requests:

a) Any and all audio or video recordings from the controlled buys from Denzel Smith or Dilon Smith detailed in the search warrant affidavits detailed below and/or reports and notes memorializing these investigations.

b) Any and all test results, including reports memorializing field tests, confirmatory laboratory tests, and/or spectrometer tests on the suspected fentanyl purchased by any

confidential source (CS) from either Denzel Smith or Dilon Smith detailed in the search warrant affidavits detailed below.

**Order**

The government has not charged the defendants with any drug crimes. Therefore, the requested information is not directly relevant to any of the offenses charged in the Indictment. Denzel argues that the information is necessary to determine whether there is a basis to challenge the search that led to the discovery of the firearms. However, as detailed fully in United States v. Jordan, No. 09-10139-JLT, 2010 WL 625280 (D. Mass. Feb. 23, 2010) (Dein, M.J.) the defendant must make "at least a preliminary showing that the search warrant affidavit contained material false information or omissions, and that there was no probable cause for the search warrant absent the disputed material." Id. at *1. In the instant case, no such preliminary showing has been made.

Denzel argues that the warrants are too general for him to even make the preliminary showing. This court disagrees. The affidavits describe controlled buys from several Confidential Sources within a finite period of time. The Confidential Sources are described as being known to the defendants, and some details regarding their reliability are provided. The police officers involved in the transactions are identified in the warrants. The phone numbers used to set up the controlled buys are identified. The cars allegedly involved in the transactions were also identified. These affidavits are not "skeletal" like the one at issue in United States v. Smith, Memorandum and Order re Discovery, No. 02-10067-NG, Docket No. 54 (D. Mass. 2003). The defendant has not put forth any basis to challenge the search warrant(s) and, therefore, the motion to compel discovery must be denied.

Finally, this court notes that in light of the government's representation that no audio or video recordings or notes of the controlled buys exist, Denzel's request for such materials is moot.

2.     **The Motion of Defendant Dilon Smith** ("Dilon") **to Compel Discovery** (Docket No. 48) is ALLOWED IN PART AND DENIED IN PART as follows.

### Specific Requests

In his motion, Dilon asks for information about the identities of the government's confidential sources and their reliability.  See Dilon's Motion to Compel (Docket No. 48) at 4, ¶¶ 1-3.  In light of the government's representations that it does not intend to call any CS as a witness, the fact that the drug transactions have not been charged, and the evidence in the record that the Confidential Sources have concerns about their safety, these requests must be denied.  "[W]hen the government informant is not an actual participant or a witness to the offense, disclosure is required only in those exceptional cases where the defendant can point to some concrete circumstance that might justify overriding both the public interest in encouraging the flow of information, and the informant's private interest in his or her own safety."  United States v. Martinez, 922 F.2d 914, 921 (1st Cir. 1991).  No such showing has been made in the instant case.

Dilon has also requested the "reports of examinations and tests conducted on the seized firearms, and the sweatshirt."  Dilon's Motion at 4.  In particular, a witness at the shooting on November 24, 2017 described the shooter as wearing a white hooded sweatshirt.  The government has produced a Criminalistics Report stating that gunshot residue trace evidence was found on a white hooded sweatshirt that it contends belongs to Dilon.  See Gov't Opp. at 13.  The government has also produced a Firearms Identification Section Report prepared by the State Police opining that a spent casing found at the scene of the November 24 shooting was fired from the Heckler & Koch pistol seized from the apartment at 177 Megan Road, and a Certificate of Examination and Test Firing confirming that the two firearms and ammunition seized from the apartment at 177 Megan Road were operable.  Gov't Opp. at 13.  The government admits that the requested information will be produced in connection with expert discovery, but contends that it is too early in the case to require its production at this time.  The

defendant contends that these are critical pieces of evidence, and that its early production is necessary so that his experts can conduct their own analyses, and so that he can make an informed decision as to how best to proceed in this case.

This court agrees that the underlying data necessary for defendant's own experts to evaluate the reports that have been produced, and to enable the experts to conduct their own analyses, should be produced at this time. This critical evidence is necessary for the defendant to prepare for trial, and to consider his options as to how to proceed. This court sees no reason why its production should be delayed, since the case clearly cannot proceed to trial without its production to the defendant, and the opportunity for defense experts to evaluate the evidence.

The parties shall meet and confer as to the scope of information needed by the defense experts at this time. If they are unable to agree, the parties may file an appropriate motion with this court. The production shall be made within two weeks of the date of this Order, unless otherwise agreed by the parties.

SO ORDERED.

       / s / Judith Gail Dein
JUDITH GAIL DEIN
UNITED STATES MAGISTRATE JUDGE