UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Docket No.   18-cr-10087-FDS |
| | ) | |
| DENZEL SMITH | ) | |

## MOTION TO COMPEL DISCOVERY

The defendant, Denzel Smith, moves this Court to compel the government to provide copies of any and all reports (redacted to protect the identity of the confidential informant) documenting surveillance of Denzel Smith coming to and/or leaving from 177 Megan Road or documenting surveillance of Denzel Smith which the government intends to rely on to establish a connection between Denzel Smith and 177 Megan Road.

The defendant also requests any and all reports (redacted) documenting controlled buy transactions which the government intends to rely on for relevant conduct at sentencing.

### 1. FACTS

The government has filed a superseding indictment charging Di'lon Smith and Denzel Smith with one count of Possession with Intent to Distribute Fentanyl, one count of Possession with Intent to Distribute 100 Grams or More of a Controlled Substance Analogue,[1] Felon in Possession of a Firearm and Ammunition, and two counts of Possession of a Firearm in Furtherance of a Drug Trafficking Crime (one tied to each alternative drug trafficking crime charged).

As previously, the indictment arises from the November 29, 2017 execution of a search

---

[1] Both charges are for the substance seized from 177 Megan Road on November 29, 2017.

1

warrant at the basement apartment of 177 Megan Road in Hyannis, a location that the government represents was leased by Denzel Smith's brother, Di'lon Smith. While previously uncharged, the government has now charged each defendant with possession with intent to distribute the evidence seized during the execution of that warrant, which were later determined to contain the unscheduled substance "cyclopropyl fentanyl."

Denzel Smith did not live at, or have any official connection with the address where the firearms and cyclopropyl fentanyl were found, and the only item readily identifiable as belonging to him there was bundled mail addressed to him which was located on a shelf in the bedroom closet.

In its Opposition to Defendant's Motion to Compel Discovery (D.E. 51) ("Gov. Opp."), the government detailed evidence tying Denzel Smith to the apartment at 177 Megan Road, specifically a) the mail found in the closet referenced above; b) "police surveillance of Denzel at 177 Megan Road and leaving that address to sell fentanyl to a confidential informant"; and c) GPS data indicating that Denzel Smith's car traveled from the scene of a shooting to 177 Megan Road on November 24 and stayed overnight there, approximately five days prior to the execution of the search warrant at this address. *See* Gov. Opp. at 3.

The search warrant affidavit for 177 Megan Road describes one occasion during the week of November 18, 2017 when police physically surveilled Denzel Smith from 177 Megan Road to a controlled buy. Based on the government's opposition it is unclear whether there are additional instances where the government surveilled Denzel Smith from 177 Megan Road to a controlled buy, or if that constitutes the single instance. Other information in the case, specifically the search warrant application for 321 Mitchell's Way, documents that GPS surveillance of Denzel Smith led police to believe that a separate location, not 177 Megan Road, was Denzel Smith's alleged "stash house."

## 2.  LEGAL ARGUMENT

Redacted copies of surveillance reports documenting Denzel Smith's association with 177 Megan Road are material to preparing a defense and thus discoverable pursuant to Fed. R. Crim. P. 16(a)(1)(E)(i). This information may also be exculpatory to the extent it suggests a minimal association between Denzel Smith and the address where firearms and fentanyl were found. *See, e.g., United States v. de la Cruz-Paulino*, 61 F3d 986, 998 (1st Cir. 1995) ("To be convicted of aiding and abetting, more than "mere presence" at the scene is required.") Finally, this information may be relevant to sentencing, to the extent that may affect any arguments about the scope of relevant conduct.

Information that is "material to preparing a defense" must be produced pursuant to Fed. R. Crim. P. 16(a)(1)(E)(i). When a defendant requests discovery that is material to preparing the defense, production is required when the item "bear[s] more than some 'abstract logical relationship to the issues in the case,'" and "will enable him 'significantly to alter the quantum of proof in his favor.'" *United States v. Poulin*, 592 F.Supp.2d 137, 143 (D. Me. 2008); *United States v. Santana*, 83 F.Supp.2d 224, 232 (D.P.R. 1999)). "[D]emonstrating materiality 'is not a heavy burden.'" *Id.* Under Rule 16, the government must disclose both inculpatory and exculpatory evidence. *Id. See also United States v. Facteau*, 2015 WL 6509120, at *1 (D. Mass. Oct. 28, 2015) ("Rule 16 is not limited to evidence that is helpful to a defendant's case because '[i]t is just as important to the preparation of a defense to know its potential pitfalls as to know its strengths.'").

When evidence is considered exculpatory, disclosure is also required under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87.

3

This duty to produce exculpatory evidence extends to evidence that is, "known only to police investigators and not to the prosecutor." *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995). This duty also encompasses evidence which is only relevant to impeachment. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972). Moreover, prosecutors are required to disclose to defense counsel all exculpatory information, including information that cumulatively is material. *United States v. Diabate*, 90 F. Supp. 2d 140, 142 (D. Mass. 2000).

In addition to the items detailed in F.R.C.P. 16, the local rules also provide that the government must disclose "exculpatory information," which includes, but is not necessarily limited to, information that tends to (1) cast doubt on the defendant's guilt as to any essential element in any count in the indictment or information; (b) cast doubt on the admissibility of evidence that the government anticipates using in its case-in-chief, that might be subject to a motion to suppress or exclude . . . (3) cast doubt on the credibility or accuracy of any evidence the government anticipates using in its case in chief; or (4) diminish the degree of the defendant's culpability or the defendant's Offense Level under the United States Sentencing Guidelines. *See* L.R. 116.2(a). Exculpatory information that tends to directly negate the defendant's guilt concerning any count in the indictment must be provided within 28 days of arraignment. *See* L.R. 116.2(b)(1).

### 3. CONCLUSION

For the reasons stated above Denzel Smith respectfully requests that this Honorable Court compel the government to provide the information detailed above.

Respectfully Submitted,

DENZEL SMITH
By His Attorney,

*/s/ W. Jamiel Allen*
W. Jamiel Allen
AZ Bar No. 024631
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061

CERTIFICATE OF SERVICE

I, W. Jamiel Allen, Esquire, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on November 16, 2018.

*/s/ W. Jamiel Allen*
W. Jamiel Allen