UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>)<br>(1) DI'LON SMITH, a/k/a DILON SMITH, and  )<br>(2) DENZEL SMITH,  )<br>)<br>Defendants.  ) | Criminal No. 18-10087-FDS |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION
TO SUPPRESS EVIDENCE SEIZED FROM THE HONDA CIVIC**

The United States respectfully requests that the Court deny the defendants' motion to suppress evidence seized on November 29, 2017, during a warrantless search of a Honda Civic parked at 177 Megan Road in Hyannis. Officers searched the Civic after executing a search warrant for the basement apartment of 177 Megan Road. The automobile exception to the Fourth Amendment's warrant requirement applies because officers had probable cause that the Civic contained evidence of drug dealing.

**FACTS**

The defendants are Denzel Smith ("Denzel") and his fraternal twin brother, Dilon Smith ("Dilon"). The government's opposition to Dilon's motion to suppress all evidence derived from the execution of the search warrant for the basement apartment of 177 Megan Road, DN 91, is incorporated herein by reference.

In the late summer/early fall of 2017, Yarmouth and Barnstable police began investigating Denzel and Dilon for distributing fentanyl. DN 91 at 1. As part of the investigation, officers obtained five search warrants. *Id*. at 1-2.

A. **The Controlled Buys**

The search warrants referenced a total of six controlled purchases of narcotics from the defendants:

1. Controlled Buy #1: During the week of October 20, 2017, a confidential informant ("CI") made a controlled purchase of fentanyl from Dilon, who arrived at the prearranged meet location in his BMW. The transaction took place inside the BMW. *See* DN 88-5, ¶ 4.

2. Controlled Buy #2: During the week of November 5, a CI made a controlled purchase of fentanyl from Denzel, who arrived at the prearranged meet location in his Chevy Impala. The transaction took place at/in the Impala. *See* Impala Tracker Warrant Aff. (DN 91-2), ¶ 3.

3. Controlled Buy #3: During the week of November 14, a CI made a controlled purchase of fentanyl from Denzel. Denzel left 177 Megan Road in his Impala and headed straight to the prearranged meet location. The transaction took place at/in the Impala. *See* DN 88-1, ¶ 7. This controlled purchase is the same one described in ¶ 4 of the affidavit supporting the search warrant for the GPS tracker for the Impala. *See* DN 91-2, ¶ 4.

4. Controlled Buy #4: Within 72 hours before November 22, a CI made a controlled purchase of fentanyl from Dilon, who arrived at the prearranged meet location in his BMW. The transaction took place inside the BMW. *See* DN 88-5, ¶ 6.

5. Controlled Buy #5: Within 72 hours before November 28, a CI made a controlled purchase of fentanyl from Dilon. Dilon left 177 Megan Road in his BMW and drove straight to the prearranged meet location. The transaction took place at/in

the BMW. *See* DN 88-1, ¶ 8.

6. <u>Controlled Buy #6</u>: Within 48 hours before November 29, a CI made a controlled purchase of fentanyl from Denzel. Denzel left 321 Mitchells Way in his Impala and drove straight to the prearranged meet location. The transaction took place at the Impala. *See* DN 88-3, ¶ 5.

The controlled buys indicated to police that the defendants used vehicles to make their drug sales. They did not sell out of a house or apartment.

### B. Information Known to Officers About the Civic Before the Search

Before searching the Civic, officers knew that it was registered to C.W., Denzel's girlfriend. DN 91 at 7. They also knew that Denzel sometimes drove it:

- Officers saw Denzel driving the Civic on November 15. DN 88-4 at DILON 0567.

- On November 16, officers saw the Civic parked at 177 Megan Road. *Id.* at DILON 0568. Then they saw Denzel exit the rear of 177 Megan Road, walk to the Civic, look up and down the street, place something in the trunk of the Civic, and drive away. *Id.*

- Detective Ginnetty had seen Denzel, while driving the Civic, conduct short meetings that he believed were drug deals. *See* DN 88-2 at DILON 0102.

### C. The Searches of the Apartment and the Civic

On the morning of November 29, 2017, before executing the search warrant for the 177 Megan Road apartment, officers saw Denzel and Dilon arrive at that address in the Civic. Denzel was driving, Dilon was in the front passenger seat, and a third man, M.M., was in the back. DN 91 at 7. Denzel parked the Civic in the driveway, and the three men entered the apartment. About

2½ hours later, Dilon's girlfriend, A.S., arrived in Dilon's BMW and entered the apartment. *Id.* A few minutes later all four people emerged from the apartment and walked to the driveway. As Denzel was entering the driver's side of the Civic, officers announced themselves and secured the four individuals. *Id.* Denzel, who was searched pursuant to the warrant, had keys to the Civic. *See* DN 88-2 at DILON 0105. Officers then searched the apartment. They found drugs, drug packaging materials, two firearms, and ammunition. DN 91 at 8.

After searching the apartment, officers searched the Civic. *Id.* Inside the trunk they found a backpack containing a grinder with residue, blue gloves, plastic baggies, a 1000-gram bag of Mannitol (a cutting agent), a substance that tested positive for MDMA (Ecstasy), an empty box for one of the narcotic presses found inside the apartment, a digital scale, mail addressed to Denzel, and photos of Denzel's children. *Id.*

## ARGUMENT

The Court should deny the defendants' motion to suppress the evidence seized from the Civic. The government concedes that the warrant for the apartment did not include the Civic, and that the Civic was not located within the curtilage of the apartment. Nevertheless, the Court should deny the motion under the automobile exception because the officers had probable cause to search the Civic.

"The Fourth Amendment ordinarily requires police to obtain a warrant before conducting a search, but under the so-called 'automobile exception,' all the police need is probable cause to search the vehicle." *United States v. Gonsalves*, 859 F.3d 95, 103 (1st Cir.), *cert. denied*, 138 S. Ct. 367 (2017). The automobile exception does not require exigent circumstances. *See Maryland v. Dyson*, 527 U.S. 465, 466 (1999). Nor does it matter whether the police had the ability or time to obtain a warrant, or whether the suspect was in custody. *See Pennsylvania v. Labron*, 518 U.S.

938, 940 (1996). "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Id.*

Probable cause exists when "the totality of the circumstances suggests that there is a fair probability that contraband or evidence of a crime will be found in the vehicle." *Gonsalves*, 859 F.3d at 103 (internal quotation marks omitted).

> The test for probable cause is not reducible to precise definition or quantification. Rather, the standard is satisfied when the totality of the circumstances create a fair probability that evidence of a crime will be found in a particular place. All that is required is the kind of fair probability on which reasonable and prudent people, not legal technicians, act.

*United States v. White*, 804 F.3d 132, 136 (1st Cir. 2015) (citations and internal quotation marks omitted); *see also United States v. Rivera*, 825 F.3d 59, 63-64 (1st Cir. 2016) ("probable cause does not demand certainty, or proof beyond a reasonable doubt, or even proof by a preponderance of the evidence – it demands only a fair probability that contraband or evidence of a crime will be found in a particular place") (internal quotation marks omitted).

At the time they searched the Civic, officers had probable cause to believe that the car contained drugs or other evidence of drug dealing, based on the following information known to them:

- Officers had monitored controlled purchases of fentanyl from Denzel out of his Impala and from Dilon out of his BMW. Each defendant's modus operandi for selling drugs was to use a vehicle.

- Officers saw Denzel driving the Civic on November 15.

- On November 16, officers saw the Civic parked at 177 Megan Road. Then they saw Denzel exit the rear of the property, walk to the Civic, look up and down the street, place something in the trunk of the Civic, and drive away. *Id.*

- Detective Ginnetty had seen Denzel, while driving the Civic, conduct short meetings that he inferred were drug deals.
- On November 29, Denzel drove the Civic to 177 Megan Road, parked, and went inside the apartment – which contained substantial evidence of drug dealing – with Dilon and a third man. When they left the apartment 2½ hours later, Denzel was about to get into the driver's seat and had the keys to the Civic on his person.

Given all of this information, a person of reasonable caution would have believed that the Civic contained drugs or evidence of drug-dealing. "[T]he totality of the circumstances create[d] a fair probability that evidence of a crime" would be found in the Civic. *White*, 804 F.3d at 136.

In arguing that the police lacked probable cause, the defendants rely primarily on *United States v. Smith*, 533 F. Supp. 2d 227 (D. Mass. 2008). The facts in that case, however, are distinguishable. In *Smith*, police obtained a warrant to search the second-floor apartment of a building based on evidence that the defendant was selling drugs out of that apartment. *Id.* at 230, 234. While conducting pre-search surveillance, an officer saw, parked in the driveway, a red Mazda that a cooperating witness had said the defendant drove. *Id.* The officer saw the defendant get out of the Mazda and approach a silver car in the driveway. *Id.* The officer saw an interaction between the defendant and the occupant of the silver car which he believed to be a drug deal although he saw no physical exchange. *Id.* at 234. Then he saw the silver car leave. *Id.* at 230. The defendant did not get back in the Mazda. *Id.* at 234. Police executed the warrant in the apartment, where they found a woman and three men, including the defendant. *Id.* at 230. The woman was the owner of the silver car. *Id.* at 230, 234. Inside the apartment the officers found drugs and drug packaging materials, as well as paperwork bearing the defendant's name. *Id.* at 230. Near the defendant the officers seized the keys to the Mazda, which was registered to the

defendant's sister. *Id.* Officers then conducted a warrantless search of the Mazda. *Id.* Inside they found, *inter alia*, three items that the defendant later moved to suppress: a gun, ammunition, and cash. *Id.* at 230, 231.

In granting the motion to suppress, the *Smith* court first addressed whether the automobile exception can ever apply to vehicles parked in private driveways. Although the court ultimately chose not to reach that issue, *id.* at 234, one can infer from the opinion that the court had concerns about possibly heightened privacy interests in a vehicle parked on private property. *See id.* at 233 ("The Fourth Circuit has suggested . . . that 'heightened privacy interests may be triggered when a vehicle is encountered on private property,' and the Fifth Circuit has stated that the motor vehicle exception 'may not apply when a vehicle is parked at the residence of the criminal defendant . . .'") (quoting *United States v. Brookins*, 345 F.3d 231, 237 n.8 (4th Cir. 2003); *United States v. Fields*, 456 F.3d 519, 525 (5th Cir. 2006)). Three years after *Smith* was decided, however, the First Circuit made clear that the automobile exception applies even to cars parked on private driveways. *See United States v. Goncalves*, 642 F.3d 245, 251 (1st Cir. 2011) (holding that automobile exception applied to warrantless search of defendant's car parked in his mother's driveway); *accord, e.g., United States v. Fladten*, 230 F.3d 1083, 1086 (8th Cir. 2000) (denying motion to suppress evidence seized during warrantless search of vehicle parked in defendant's driveway, where probable cause was based largely on evidence obtained during search of the home); *United States v. Hernandez-Mieses*, 257 F. Supp. 3d 165, 186 (D.P.R. 2017) (same).

The *Smith* court went on to hold that, assuming the automobile exception applied, the police lacked probable cause to search the Mazda. *Smith*, 533 F. Supp. 2d at 234-35. The court reasoned that there was no evidence that the defendant had used the Mazda in connection with

his drug sales, which he made exclusively from the apartment. *See id. Cf. United States v. Barnes*, 492 F.3d 33, 37 (1st Cir. 2007) (citing cases in which courts have found probable cause to search a defendant's home even though evidence showed defendant sold drugs only from a vehicle).

The key fact that distinguishes this case from *Smith* is that Denzel and Dilon sold drugs only out of vehicles, not out of any residence. It is true that police had never seen either brother sell drugs out of the Civic. But police had seen Denzel driving the Civic not long before they searched the 177 Megan Road apartment. That surveillance included one day when they saw him at 177 Megan Road – the very location of the drug-dealing evidence – looking furtively about before putting something into the trunk of the Civic and then driving away. Denzel drove the Civic to the apartment on the day of the search, and was about to drive away in the Civic after spending a significant amount of time in the apartment. This evidence was sufficient to tie the defendants' drug dealing to the Civic. *See, e.g., United States v. Lamon*, 30 F.2d 1183, 1188-89 (2d Cir. 1991) (search warrant affidavit stating that informant had seen defendant selling drugs from his car was insufficient, standing alone, to establish probable cause to search the car because sale was undated; but probable cause was established by addition of information that defendant recently had sold drugs from a house in front of which he had parked his car); *United States v. Spearman*, 532 F.2d 132, 133 (9th Cir. 1976) (where officers obtained search warrant for defendant's apartment and car based on affidavit that described drug sales at defendant's apartment, and the only evidence about the car was a statement that "it is commonplace for dealers of heroin to have heroin that is packaged for sale in the place where they live or sell from, in their vehicles or on their persons," court affirmed denial of motion to suppress evidence seized from the car) (per curiam); *United States v. Magwood*, 2012 WL 3962756, at *6 (D.S.C.

Sept. 11, 2012) (where officers executed search warrant at house and found drug-related evidence, including several drug ledgers with nicknames, one of which was defendant's, and defendant arrived in his car shortly before officers executed the warrant, court held in dictum that probable cause supported warrantless search of defendant's car) ("Any objectively reasonable officer would conclude, based on the discovery of [substantial drug evidence in the house], that [defendant]'s car – which had just recently arrived at [the house] and was parked in front of the residence – could contain contraband or other evidence of a crime").

## CONCLUSION

The government respectfully requests that the Court deny defendants' motion to suppress the evidence seized from the Civic because the officers had probable cause to believe that the Civic would contain evidence of drug-dealing.

                          Respectfully submitted,

                          ANDREW E. LELLING
                          United States Attorney

                    By: */s/ Christine J. Wichers*
                          CHRISTINE J. WICHERS
                          Assistant U.S. Attorney

## **Certificate of Service**

I certify that, on March 15, 2019, this document filed through the ECF system was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                          */s/ Christine J. Wichers*
                          Christine J. Wichers