UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Docket No.   18-cr-10087-FDS |
| | ) | |
| | ) | |
| DENZEL SMITH | ) | |

### DENZEL SMITH'S MOTION TO SEVER AND INCORPORATED MEMORANDUM OF LAW

Defendant Denzel Smith moves, pursuant to Rule 14 of the Federal Rules of Criminal Procedure and the Fifth and Sixth Amendments of the United States Constitution, for an order severing his trial from that of his co-defendant, Di'lon Smith. As grounds, Smith states that he would be prejudiced by a joint trial and severance is necessary because the introduction of his codefendant's inculpatory statement at a joint trial would compromise his Sixth Amendment rights and prevent the jury from reaching a reliable verdict. Severance is also warranted because evidence from the search of the Honda Civic, which was suppressed as to Denzel Smith, remains admissible as to Di'lon Smith. If admitted, the impact that this evidence would have on Denzel Smith's defense would be highly prejudicial and prevent the jury from making a reliable judgment about guilt or innocence.

## FACTS

Denzel Smith and his brother Di'lon Smith have been charged with Felon in Possession of a Firearm and Ammunition (Count One), Possession with Intent to Distribute 100 grams or more of a cyclopropyl fentanyl, a controlled substance analogue (Count Two), Possession with Intent to Distribute fentanyl (Count Three), and Possession of a Firearm in Furtherance of a Drug Trafficking Crime (Counts Four and Five). The controlled substances and firearms were found

when police executed a search warrant on Di'lon Smith's basement apartment at 177 Megan Road, Hyannis on November 29, 2017. Di'lon Smith had rented that apartment one month earlier, on October 23, 2017, and was living there at the time of the search.

Police seized fentanyl, the two firearms charged in the indictment, and various items associated with narcotics dealing such as a scale, sandwich bags, and a narcotic press from the apartment. During the warrant's execution police also searched Denzel Smith's girlfriend's Honda Civic, which Smith had driven to the apartment and parked in the driveway. Police seized a backpack from the trunk containing several items relevant to narcotics distribution including an empty black box, a grinder with residue, blue gloves, a 1000-gram bag of Mannitol, plastic baggies, and a brown powdery substance field-tested positive for MMDA. The empty black box was later determined to be a case for one of the metallic narcotic presses found inside the apartment, thus providing a direct evidentiary link between Denzel Smith and the substances and firearms found inside the apartment.

Police arrested Denzel and Di'lon Smith. According to the police report, Di'lon Smith "told officers that 'they' (referring to he and his brother Denzel) had the best 'shit' on the streets and 'all the Feins want it.'"[1] However, when told Denzel was being charged he also stated that the apartment on Megan Road was his and that officers would see that if they located the lease that he signed. When Detective Ginnetty told Di'lon that Denzel had been monitored coming and going from that location and that his personal paperwork was also located in the apartment, Di'lon replied

---

[1] This statement is reproduced verbatim from the May 9, 2018 Report of Barnstable Police Detective Peter Ginnetty. Although the report recounts the statement in the third person ("they"), it is likely that Di'lon Smith used the first person "we" when speaking as the officer noted that he understood Di'lon to be speaking of himself and his brother Denzel.

2

"fuck this. I'll plead guilty tomorrow and take the rap for all of this. I'll do 20 years, I don't fuckin care."

This Court has suppressed the evidence from the Honda Civic's trunk with regard to Denzel Smith, but denied the same motion as to Di'lon Smith for lack of standing (D.E. 115). The Court also declined to suppress the evidence derived from the execution of the search warrant at 177 Megan Road, and ruled that, nevertheless, Denzel Smith did not have standing to object to that search (D.E. 101).

## LEGAL ARGUMENT

Rule 14(a) of the Federal Rules of Criminal Procedure states: "[i]f the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant or the government . . . the court may . . . sever the defendants' trials or provide any other relief that justice requires." Severance is appropriate if "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *see also United States v. O'Bryant*, 998 F.2d 21, 25 (1st Cir. 1993). "Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Zafiro*, 506 U.S. at 539. "Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice." *Id.* (citing *Bruton v. United States*, 391 U.S. 123 (1968)).

In this case, severance is necessary for two reasons. First, severance is necessary because the introduction of Di'lon Smith's statement made during his post-arrest interview that "they have the best shit on the streets and all the Feins want it" would violate Denzel Smith's right to

3

confront his accusers as guaranteed by the Sixth Amendment. *Bruton v. United States*, 391 U.S. at 135-37; *Crawford v. Washington*, 541 U.S. 36 (2004). Additionally, severance is warranted here because evidence from the Honda Civic, which provides an evidentiary link between Denzel and the drugs found inside 177 Megan Road, remains admissible against Di'lon Smith and thus would prejudice Denzel Smith in any joint trial with Di'lon. *See United States v. Innamorati*, 996 F.2d 456, 469 (1st Cir. 1993) ("Prejudice from joinder can come in various forms, including jury confusion, the impact of evidence that is admissible against only some defendants, and 'spillover' effects where the crimes of some defendants are more horrific or better documented than the crimes of others."). Because Denzel Smith would suffer substantial prejudice from a joint trial, these trials should be severed pursuant to F.R.C.P. 14.

I.     THE INTRODUCTION OF DI'LON SMITH'S STATEMENT AT A JOINT TRIAL
       WOULD COMPROMISE DENZEL SMITH'S CONSTITUTIONAL RIGHTS.

The Sixth Amendment's Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. It is well established that a codefendant's out-of-court statement is admissible against him as a "party admission" under Fed.R.Evid. § 801(d)(2). However, that same statement is inadmissible hearsay and raises Confrontation Clause concerns with respect to another defendant being prosecuted in a joint trial. *United States v. Vega Molina*, 207 F.3d 511, 519 (1st Cir. 2005) (citing *Crawford*, 541 U.S. at 51-52, 68).

A court may attempt to avoid such hearsay or Confrontation Clause problems by instructing the jury not to consider the statements against any defendant other than the codefendant-declarant. *Id*. at 519. As *Bruton* holds, however, such a limiting instruction will not effectively remedy hearsay and Confrontation Clause problems when the "powerfully

incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant" are admitted at trial. *Bruton*, 391 U.S. at 135-36 (concluding that a mistrial was required where the jury was exposed to incriminating statements by a co-defendant whom the defendant could not cross-examine, notwithstanding a limiting instruction). A statement is "powerfully incriminating" when it is "inculpatory on its face." *Vega Molina*, 407 F.3d at 520.

The introduction of Di'lon Smith's statement at a joint trial with Denzel would seriously prejudice Denzel's Constitutional rights. Here, the statement that "they (referring to he and his brother Denzel) have the best shit on the streets and all the Feins want it" is inculpatory on its face. It is a direct admission of the intent to distribute element for both Di'lon and Denzel, a necessary element for conviction for Counts Two, Three, Four and Five.[2]  In a joint trial this statement is admissible against Di'lon under Fed.R.Evid. 801(d)(2) as a "party admission." It is equally clear that the incriminatory statement is not admissible against his codefendant, Denzel Smith. *United States v. Vega Molina*, 407 F.3d 511, 519 (1st Cir. 2005) (citing *Crawford v. Washington*, 541 U.S. 36, 52-53 (2004)). As it was given during a post-arrest police interview, the statement is testimonial (*Crawford*, 541 U.S. at 52-53) and would be offered to prove the truth of the matter asserted. *Compare United States v. Cruz-Diaz*, 550 F.3d 169 (1st Cir. 2008) (statement by robbery codefendant that "the money is in the black bag, we already threw away the weapons" and "we're screwed, less than five minutes and they caught us" was only offered into evidence to rebut defendant's argument that police failed to pursue other investigatory options after apprehending defendants and, in that context, was not offered for the truth of the

---

[2] To prove a violation of 18 U.S.C. § 924(c), the government must first prove the predicate crime of drug trafficking. *See* Pattern Criminal Jury Instructions for the District Courts of the First Circuit, Inst. 4.18.924 (2019).

matter asserted); *Tennessee v. Street*, 471 U.S. 409, 413 (1985) (codefendant's confession was introduced only for the limited purpose of rebutting defendant's testimony that his own confession was coerced, and not for the truth of the matter asserted).

Typically, there are three solutions to a Bruton problem: exclusion of the statement, redaction of the statement, or severance of the defendant who provided the statements from those who did not. It is difficult to conceive of how Di'lon Smith's statement could be redacted in such a way that the jury would not immediately infer Denzel's identity. *See United States v. Vega Molina*, 407 F.3d 511, 520 (1st Cir. 2005) (observing that a particular case may have so few defendants that even a redacted statement leaves little doubt in the listener's mind about the identity of the other person). Moreover, simply changing the plural statement "they" to "I" to remove all reference to his codefendant Denzel might undermine Di'lon's own theory of defense. *See, e.g., Ex Parte Sneed*, 783 So.2d 863 (Ala. 2000) (where defendant made incriminating statements that also implicated his co-defendant, and court redacted and edited statement, changing "we" references to "I" and deleting references to the co-defendant, this undermined the defendant's defense and was consequently prejudicial error). In addition, the continuation of Denzel's statement, "I'll take the rap for all this" would undermine that editorial choice as it implies that Di'lon would agree to take all the responsibility which rightfully should be shared with his co-defendant. Thus, the introduction of this statement at a joint trial would compromise Denzel Smith's Sixth Amendment right to confront the witnesses against him and would prevent the jury from rendering a reliable verdict. Rule 14 requires severance.

II.     THE INTRODUCTION OF EVIDENCE FROM THE HONDA CIVIC AT A JOINT
        TRIAL WOULD COMPROMISE DENZEL SMITH'S RIGHTS AND BE HIGHLY
        PREJUDICIAL TO HIS CASE.

This Court has ruled that police compromised Smith's Fourth Amendment rights when they searched the Honda Civic. Evidence from the Civic has been suppressed as to Denzel Smith but remains admissible against Di'lon Smith, given Di'lon Smith's lack of standing to object to the search of the Honda Civic.[3] Admission of this evidence in a joint trial with Di'lon would be fatal to Denzel Smith's defense.

At the time of his arrest, Denzel Smith was a visitor at his brother Di'lon's apartment at 177 Megan Road. To establish Denzel Smith's guilt on any of the charged counts, the government must first prove that Denzel Smith knowingly and intentionally possessed the controlled substances charged in the indictment.[4] It must also prove that Denzel Smith knowingly possessed those controlled substance with the intent to distribute them. *United States v. Latham*, 874 F.2d 852, 861 (1st Cir. 1989). Admission of the material from inside the car which Denzel drove to the location, particularly the empty black box which police determined to be a case for a narcotic press found inside the house, would provide this evidentiary link.

In *Zafiro*, the Supreme Court noted that the risk that a joint trial would compromise a specific trial right of one of the defendants might occur "when evidence that the jury should not

---

[3] While the relevance of this evidence as to Di'lon Smith could be contested, Defendant does not know how the government will attempt to try their case.

[4] *See United States v. Cortés-Cabán*, 691 F.3d 1, 17 (1st Cir. 2012) (stating elements). Knowing possession of the contraband may be inferred from evidence of actual possession (meaning "immediate, hands-on physical possession") or constructive possession. *United States v. García-Carrasquillo*, 483 F.3d 124, 130 (1st Cir. 2007) (§ 841(a)(1)). Constructive possession requires that a person "knowingly has the power and intention to exercise dominion and control over the object, directly or through others." *United States v. McLean*, 409 F.3d 492, 501 (1st Cir. 2005). Mere presence with or proximity to the contraband or weapon or association with another who possesses the same are not enough to prove constructive possession. *See, e.g., United States v. Rodriguez-Lozada*, 558 F.3d 29, 40 (1st Cir. 2009) (finding insufficient evidence of constructive possession).

consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Zafiro*, 506 U.S. at 539. This is exactly the situation in the instant case. If the government attempts to elicit evidence of the results of the search of the Honda Civic in their case against Di'lon Smith, it will compromise Denzel Smith's right to a trial free from unconstitutionally obtained evidence, be highly prejudicial to his case, and prevent the jury from making a reliable judgment about Denzel Smith's guilt or innocence. Given the fact that the car was owned by Denzel Smith's girlfriend, he was in control of it on that date, and the evidence was found inside his backpack, it would be almost impossible for a jury not to associate that evidence with Denzel, and thus no limiting instruction could contain the prejudice. As the First Circuit has observed, "the prime factor that a court must consider in evaluating a severance motion is whether the court may reasonably expect the jury to collate and appraise the independent evidence against the defendant." *United States v. Rodriguez-Marrero*, 390 F.3d 1, 27 (1st Cir. 2004). *See also United States v. Snype*, 441 F.3d 119, 129-130 (noting that jurors are presumed to follow instructions, but "the presumption can 'evaporate[ ] where there is an overwhelming probability that the jury will be unable to follow' a limiting instruction that demands 'mental acrobatics' of the jurors.") (internal citations omitted). This is such a case. Because Denzel Smith has a right to a trial free from unconstitutionally obtained evidence, this Court must sever under Rule 14.


CONCLUSION

Defendant respectfully requests that this Honorable Court sever the trial of Denzel Smith from the trial of Di'lon Smith.

Respectfully submitted,

DENZEL SMITH
By his attorney,
*/s/ W. Jamiel Allen*
W. JAMIEL ALLEN
Assistant Federal Public Defender
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061
Jamiel_Allen@fd.org

<u>CERTIFICATE OF SERVICE</u>

I, W. Jamiel Allen, Esquire, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on June 14, 2019.

*/s/ W. Jamiel Allen*
W. Jamiel Allen

9